IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| BILLIE PARSONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-03244-CV-S-JTM |
| | ) | |
| AMICA MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

On January 8, 2011, plaintiff Billie Parsons ("Parsons") experienced a fire at his garage/guest house located in Mountain Grove, Missouri. At the time of the fire, Parsons had placed most of his personal possessions in the garage/guest house. The principle residential building on Parsons' property was undamaged by the fire.

Approximately one and a half months prior to the fire, on November 22, 2011, Parsons had purchased a homeowner's insurance policy ("the Policy") from defendant Amica Mutual Insurance Company ("Amica"). At the time Parsons purchased the Policy, he obtained from Amica additional coverage for his garage/guest house. However, Amica has not paid any insurance benefits to Parsons following the fire, arguing that Parsons "breached his duty to cooperate during Amica's investigation of the loss." Consequently, Parsons initiated the present litigation.

Currently pending before the Court are: (1) Amica's motion for summary judgment [Doc. 38], and (2) Amica's motion to strike Parsons' expert witnesses [Doc. 36]. For the reasons set out herein, the Court DENIES both motions.

## A. Summary Judgment

The parties do not dispute that the language employed in the Policy (*i.e.*, the so-called cooperation clauses) sought to impose various duties on Parsons in the event of a loss to covered property. In moving for summary judgment, Amica focuses on three of the alleged duties:

(1) Parsons was required to provide Amica with copies of receipts or credit card statements for any items being claimed under the Policy that had been purchased by Parsons in the four years prior to the fire;

(2) Parsons was required to submit a complete and notarized proof of loss within 60 days of the fire; and

(3) Parsons was required to submit to an Examination Under Oath ("EUO") by Amica's counsel.

The parties seemingly agree that this dispute is governed by Missouri law. In Missouri, insurance agreements are contracts and, as such, courts enforce insurance policies according to their unambiguous terms. *Seeck v. Geico General Insurance Co.*, 212 S.W.3d 129, 132 (Mo. 2007) (*en banc*). On the other hand, if "policy language is ambiguous, it must be construed against the insurer." *Id.* (*quoting Gulf Insurance Co. v. Noble Broadcast*, 936 S.W.2d 810, 814 (Mo. 1997) (*en banc*)). In construing the terms of an insurance policy, Missouri law requires a court to apply the meaning which would be attached by an ordinary person of average understanding if purchasing insurance – resolving ambiguities in favor of the insured. *Seeck*, 212 S.W.3d at 132.

In general, cooperation clauses in insurance agreements "are valid and enforceable in Missouri." *Riffe v. Peeler*, 684 S.W.2d 539, 542 (Mo. App. [W.D.] 1984). In order to prevail based on the breach of a cooperation clause by an insured, an insurer must establish:

2

> (1) a material breach;
>
> (2) the insurer did not waive its right to assert the defense of material breach nor was the insurer estopped from asserting it,
>
> (3) the existence of substantial prejudice from the breach, and
>
> (4) the exercise of reasonable diligence to secure the insured's cooperation before the insurer denied coverage because of breach of a cooperation clause.

*Hendrix v. Jones*, 580 S.W.2d 740, 742 (Mo. 1979) (*en banc*); *Riffe*, 684 S.W. 2d at 542. In addition, because Amica asserts their defense in the guise of a motion for summary judgment, it must establish that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). The initial burden rests on Amica to point out the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552 (1986). Moreover, on those issues for which Amica bears the burden of proof,[1] it must make a showing that "there is no genuine issue of material fact such that no reasonable jury could return a verdict for the non-moving party." *Boerner v. Brown and Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001).

---

[1] "A cooperation clause in an insurance policy is a condition subsequent which <u>necessitates proof by the insurer</u> of facts sufficient to relieve it of liability." *Hayes v. United Fire & Casualty Co.*, 3 S.W.3d 853, 857 (Mo. App. [E.D.] 1999) (*emphasis added*).

3

As previously noted, cooperation clauses in insurance contacts are generally valid and enforceable. *Kearns v. Interlex Insurance Co.*, 231 S.W.3d 325, 331 (Mo. App. [S.D.] 2007). To that end, Missouri law has long recognized:

> [An] insured must perform the conditions of the contract upon which insurer's liability depends and, absent fraud, bad faith, or collusion by insurer, the insured's unexcused failure to cooperate in a substantially material respect releases insurer from liability under the policy as to the particular casualty in question.

*Quisenberry v. Kartsonis*, 297 S.W.2d 450, 453 (Mo. 1957). Thus, in order "[t]o establish a breach of a cooperation condition of an insurance contract requires a showing of [an] insured's unexcused lack of cooperation in a substantially material respect." *Id.* Put alternatively:

> Obviously it is not every failure to accede to the company's request for assistance that will have the effect of defeating the rights of the assured under his policy. Generally speaking, to constitute a breach of the cooperation provision of the contract, there must be a lack of cooperation by the assured in some material and substantial respect, and any formal, inconsequential, or collusive lack of cooperation will be immaterial.

*Finkle v. Western Automobile Insurance Co.*, 224 Mo. App. 285, 26 S.W.2d 843, 847 (1930). These rules are in keeping with general contract law in Missouri that holds that "[i]n the absence of an express provision in a contract requiring literal compliance, substantial compliance of a contract is sufficient." *Pepsi Midamerica v. Harris*, 232 S.W.3d 648, 653 (Mo. App. [S.D.] 2007).

Turning then to the alleged breaches of cooperation by Parsons, Amica first asserts that Parsons failed to provide Amica with copies of receipts or credit card statements for any items being claimed under the Policy that had been purchased by Parsons in the four years prior to the fire. In that regard, the Policy provides that after a loss to covered property:

4

> [An insured] must prepare an inventory of damaged personal
> property showing the quantity, description, actual cash value and
> amount of loss. Attach all bills, receipts and related documents
> that justify the figures in the inventory.

On March 2, 2011, nearly two months after the fire, an Amica employee, Don Nguyen, sent a letter to Parsons, stating:

> At this juncture, as part of our investigation, we are requesting
> copies of your cell phone records for the period of December 1,
> 2010 through January 31, 2011 as well as cell phone records of
> [Parsons' girlfriend]. In addition, we are requesting any copies of
> purchase receipts or credit card statements for the items purchased
> in the past 4 years being claimed under your insurance policy.

However, as testified to by Mr. Nguyen, Parsons informed Amica that "all of his documents" and "financial records" he might have otherwise had were destroyed in the fire. Consequently, Amica had Parsons sign a credit authorization.[2] In addition, Parsons provided Amica with a copy of the warranty deed on the property and his girlfriend's telephone records. With the present summay judgment record, the Court finds that there are questions of fact that preclude summary judgment on this issue as to whether Parsons breached this provision, whether any breach was material, and whether Amica was substantially prejudiced by any material breach.

Amica next asserts that Parsons failed to submit a complete and notarized proof of loss within 60 days of the fire. To that end, the Policy states that a after a loss to covered property, an insured must send to Amica (within 60 days of its request):

> [A] signed, sworn proof of loss which sets forth, to the best of [an
> insured's] knowledge and belief:
>
> (a)    The time and cause of loss;
>
> (b)    The interest of all insureds and all others in the
>        property involved and all liens on the property;

---

[2]    There appears to be a disputed fact issue as to whether Parsons was agreeable to signing an authorization for Amica to obtain information about Parsons from his financial institutions. The disputed facts must be construed against Amica at this stage in the proceedings.

5

(c) Other insurance which may cover the loss;

(d) Changes in title or occupancy of the property during the term of the policy;

(e) Specifications of damaged buildings and detailed repair estimates;

(f) The inventory of damaged personal property;

(g) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(h) Evidence or affidavit that supports a claim [under another Policy provision] stating the amount and cause of loss.

On Thursday, March 10, 2011, Mr. Nguyen wrote to Parsons and enclosed a one-page proof of loss form "to be completed, notarized, and returned within sixty (60) days." Parsons received Mr. Nguyen's letter on Monday, March 14, 2011. Thereafter, on May 12, 2011 (59 days after receiving Mr. Nguyen's letter), Parsons returned the one-page sworn proof of loss, signed and notarized, that valued his actual loss and damage at $200,000.00. As provided to Parsons by Amica, the proof of loss form that he signed already had the date, time, and location of the loss typed in. In addition, the form submitted to Parsons by Amica had typed in:

> Any other information that may be required will be furnished on call and considered part of this proof.

Amica argues that the returned proof of loss was inadequate because it "failed to provide specifications of damaged buildings, detailed repair estimates, a complete inventory of damaged personal property showing the quantity, description, including the age of each item, actual cash value and amount of loss" and because Parsons "failed to attach any bills, receipts and related items documents to justify the amount claimed." Parsons argues that he timely complied with Amica's request to return the one-page proof of loss form completed and notarized and that none

of the additional material was required on the face of the proof of loss form. The Court finds that there are questions of fact that preclude summary judgment on this issue as to whether Parsons breached this provision, whether any breach was material, and whether Amica was substantially prejudiced by any material breach. As noted by the Missouri Supreme Court:

> Substantial compliance with a policy's notice requirement is sufficient, and a failure to comply in some immaterial respect does not justify the avoidance of liability on the part of the insurer. In determining whether or not an insured was in substantial compliance with a policy's notice provision, the trier of fact must consider whether the insurance company was prejudiced by the delay. Furthermore, the burden of proving such prejudice is on the insurer and the presence or absence of prejudice in this context is an issue of fact to be determined on the particular facts of each case.

*Tresner v. State Farm Insurance Co.*, 913 S.W.2d 7, 15-16 (Mo. 1995) (*en banc*) (*citations omitted*).³

Finally, Amica charges that Parsons breached the cooperation clause of the Policy when he failed to submit to an Examination Under Oath ("EUO") by Amica's counsel. The Policy provides that after a loss to covered property, Amica (as "often as it reasonably requires") may insist that an insured "[s]ubmit to an examination under oath, while not in the presence of another insured, and sign the same." In his March 10, 2011 letter to Parsons requesting a notarized proof of loss, Mr. Nguyen also wrote:

---

³ It is worth noting that the MISSOURI APPROVED INSTRUCTIONS contains an instruction on "Insurance Policy Defenses" that provides:

> Your verdict must be for defendant if you believe:
>
> First, plaintiff (*describe violated policy condition, e.g., "failed to submit a proof of loss to defendant within the time prescribed by the policy"*), and
>
> Second, defendant was thereby prejudiced.

MAI 32.24 [1978 New].

7

Case 6:11-cv-03244-JTM   Document 54   Filed 10/30/12   Page 7 of 11

> [O]nce you have returned the signed and notarized proof of loss
> forms, Amica requests that you to submit to an Examination Under
> Oath, to be conducted by [Amica's retained counsel]. After you
> have returned the signed and notarized proof of loss form,
> [Amica's retained attorney] will be contacting you or you may call
> him to set up a time for your Examination Under Oath.

On April 5, 2011, Parsons' attorney wrote to Amica's retained counsel asking to "advise as soon as possible as to the time and place of the EUO you are requesting" and offering to have Parsons appear "the next week for the exam." Amica, however, asserts that no examination was taken because it never received an adequate proof of loss including supporting documentation. The Court finds that there are questions of fact that preclude summary judgment on this issue as to whether Parsons breached this provision, whether any breach was material, and whether Amica was substantially prejudiced by any material breach.[4]

Based on the summary judgment record before the Court, summary judgment in favor of Amica is not appropriate.

---

[4] The Court finds the decision in *Wiles v. Capitol Indemnity Corp.*, 215 F.Supp.2d 1029 (E.D. Mo. 2001) distinguishable. In *Wiles*, the Court found that:

> [The] Defendant insurer has demonstrated a material breach of the
> cooperation clause with respect to Plaintiff's obligation to submit
> to an examination under oath. Defendant exercised reasonable
> diligence in attempting to secure Plaintiff's cooperation, by
> requesting the examination under oath on two separate occasions
> prior to Plaintiff's filing suit.

*Id.* at 1031-32. There is no indication in the *Wiles* opinion that the insured made himself available for an examination as there is in this case. Moreover, in the *Wiles* case, the insurer did not merely mention the need to take an examination; it actually scheduled an examination on two different occasions – neither of which was attended by the insured.

## B. Expert witnesses

Amica moves to strike Parsons' two designated expert witnesses. The first expert, Thomas W. Millington, an attorney, has been retained to offer testimony regarding attorneys' fees. Normally, the issue of an award of attorneys' fees is performed by the Court and generally does not require the services of an expert witness. *See, e.g.*, *Essex Contracting, Inc. v. Jefferson County*, 277 S.W.3d 647, 656 (Mo. 2009) (*en banc*) ("[A] trial court is presumed to know the character of the [legal] services rendered in duration, zeal, and ability [and] the value of them according to custom, place, and circumstance [and, thus, a] trial court is considered to be an expert on the question of attorney fees [and] the court that tries a case and is acquainted with all the issues involved may fix the amount of attorneys' fees without the aid of evidence."). However, the Missouri statute at issue in this case provides:

> In any action against any insurance company to recover the amount of any loss under a policy of . . . fire . . ., if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, <u>the court or jury may</u>, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars <u>and a reasonable attorney's fee</u>; and the court shall enter judgment for the aggregate sum found in the verdict.

MO. REV. STAT. § 375.420 (*emphasis added*). Moreover, the MISSOURI APPROVED INSTRUCTIONS for such claims provide a form of jury verdict that includes a finding "for attorney fees." MAI 36.10 [1980 Revision]. Based on the foregoing, and assuming that Parsons is effectively electing to have a jury – and not this Court – determine any award of attorneys' fees, the Court will not strike Mr. Millington as a proposed expert for Parsons.

9

The second expert witness at issue is Parsons himself. Amica objects to Parsons offering opinion testimony regarding whether the fire on his property resulted in a "total loss" In any action brought under a fire insurance policy, Missouri's valued policy statute provides that the value of the insured real property is equal to the full amount for which the property was insured when the policy was issued. MO. REV. STAT. § 379.140. If the insured's covered property has suffered a "total loss," the measure of damages equals the amount for which the property was insured, minus certain depreciation. *Id*. The burden of proving any depreciation rests with the insurer. *West v. Shelter Mutual Insurance Co* ., 864 S.W.2d 458, 461 (Mo. App. [S.D.] 1993). If the insured's covered property suffered only a "partial loss," the insured can elect to receive either the amount of damage inflicted on the property or the amount necessary to repair the property to its condition before the fire. MO. REV. STAT. §§ 379.140, 379.150. *See also Glasgow v. Cole*, 168 S.W.3d 511, 516 (Mo. App. [E.D.] 2005) (*per curiam*) (noting that the measure of damages in a case of partial loss for real or personal property is the difference "between the reasonable values of the property immediately before and immediately after the casualty."). In cases of partial loss, the insured has the burden to prove the value of the property both before and after the loss. *Fire Insurance Exchange v. Bowers*, 994 S.W.2d 110, 112 (Mo. App. [S.D.] 1999). Any dispute as to the monetary amount of the damage may be submitted to a jury. *Id*. As noted recently by another federal court, under Missouri law:

> A structure can be considered a total loss under four different theories: (1) when the structure has lost its identity as a building; (2) when no prudent and uninsured individual would rebuild the structure; (3) when the law prohibits rebuilding; or (4) when rebuilding the structure would be more expensive than simply starting over.

*Haught v. State Farm General Insurance Co.*, 2009 WL 2235937, op. at *7 (E.D. Mo. Jul. 27, 2009).

10

Case 6:11-cv-03244-JTM   Document 54   Filed 10/30/12   Page 10 of 11

Parsons, as a property owner, is entitled to give his opinion as to the value of <u>his</u> real and personal property. In addition, <u>if a proper foundation is laid</u>, Parsons may be able to offer opinion testimony as to the expense of rebuilding. Moreover, he can offer his own testimony (not necessarily opinions) as to why he believes that the structure has "lost its identity" and why he does not believe that rebuilding the structure makes sense. All of the arguments raised in Amica's motion to strike (*i.e.*, Parsons is not a structural engineer, Parsons has only an eighth grade education, Parsons suffers from Alzheimer's-like symptoms, Parsons' loss was "nowhere near a total loss") all go to the weight to be given to Parsons' testimony and may be explored on cross-examination.

For the foregoing reasons, it is

**ORDERED** that Amica's motion for summary judgment [Doc. 38], and Amica's motion to strike Parsons' expert witnesses [Doc. 36] are **DENIED**.

*/s/ John T. Maughmer*
**John T. Maughmer**
**United States Magistrate Judge**